UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LESLIE SCOTT,<br><br>    Plaintiff,<br><br>v.<br><br>ACE PROPERTY & CASUALTY INSURANCE COMPANY,<br><br>    Defendant. | Case No. 21-11075<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [25]**

Leslie Scott was a passenger in a commercial van and sustained injuries when the van collided with another car. Scott did not have automobile insurance at the time. So she applied for benefits from the Michigan Assigned Claims Plan (MACP). After reviewing her claim, the MACP told Scott that Ace Property & Casualty Insurance Company insured the van she was in, so it was the proper provider of her benefits.

Ace disagreed and refused to compensate Scott for her injuries from the collision. So Scott sued Ace, claiming it owed her personal protection benefits for the collision. In time, Ace moved for summary judgment. Because the record shows that Ace did not insure the van Scott was in during the collision, Ace's motion for summary judgment is GRANTED.

## I.

On April 13, 2020, Leslie Scott was being driven to a dialysis center by Transcare Transportation when the 2012 Dodge Caravan she was in collided with another car. (ECF No. 25-2, PageID.166; ECF No. 25-1, PageID.161.) The police report states that both drivers said they had a green light, which caused the collision. (ECF No. 25-1, PageID.161.) The report also lists the VIN number for both vehicles involved, which according to the report's author, is typically taken at the accident scene. (ECF No. 25-1, PageID.161–162; ECF No. 31-5, PageID.361.)

Scott did not have automobile insurance at the time of the collision. (ECF No. 31-2, PageID.345.) So she filed a claim with the Michigan Automobile Insurance Placement Facility (MAIPF), which maintains the Michigan Assigned Claims Plan (MACP). (ECF No. 31-3, PageID.347.) The MACP assigns insurance to individuals who do not have insurance so they can receive personal injury benefits in the event of a car accident. The MAIPF responded to Scott's claim, stating, "Proof of loss submitted indicates the involved vehicle was insured with Ace Property under policy number CALH08470984001." (ECF No. 31-3, PageID.347.)

So Scott then turned to Ace and requested that it insure her for the collision. On September 23, 2020, Scott received an email from a Claim Director at Chubb North American Claims, which is Ace's claims adjuster. (ECF No. 31-4, PageID.350.) The director wrote, "I was finally able to connect with my insured today who provided the attached document noting that PIP coverage applies to the vehicle involved. This claim is being transferred within Chubb to the proper PIP adjuster to get in contact

with you further for the claim for Ms. Scott." (*Id.*) The attachment referenced in the director's email was a vehicle copy of the van's no-fault insurance. (ECF No.34-1, PageID.433.) That policy, though, was only effective until March 25, 2020, which was before the accident. (*Id.*)

In contrast, the Ace policy referenced in the MAIPF letter to Scott provides coverage from March 25, 2020 to March 25, 2021, a time period that does include the April 2020 accident. (ECF No. 25-4, PageID.176, 178.) But the policy includes a schedule of the covered vehicles, and none of the listed vehicles' VIN numbers match the VIN number of the 2012 Dodge Caravan Scott was in during the collision. And a 2012 Dodge Caravan is not listed by name as a covered vehicle either. (*See* ECF No. 25-4, PageID.178.)

In March 2021, Scott received a letter from Chubb, stating that it received her letter of representation from November 2020. (ECF No. 31-7, PageID.378.) The letter also advised Scott that she needs to submit medical records and bills, as well as an application for benefits form, so it could substantiate her claim. (*Id.*)

Apparently after not receiving approval of her claim from Ace, Scott sued Ace in April 2021 in Wayne County Circuit Court. (ECF No. 1-1.) Shortly after, Ace removed the case to this Court. (ECF No. 1.) Scott asserts only one count: that Ace owes her personal protection benefits under Michigan law for injuries she suffered due to the collision. (ECF No. 1-1, PageID.13–14.) Scott also filed suit in state court against MAIPF, Chubb, Transcare, and the other individuals involved in the collision. (ECF No. 34-3.)

After conducting discovery, Ace filed a motion for summary judgment. (ECF No. 25.) That motion is before the Court. Given the clear record, the Court considers this motion without further argument. *See* E.D. Mich. LR 7.1(f).

## II.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The party opposing the motion must show that 'there is a genuine issue for trial' by pointing to evidence on which 'a reasonable jury could return a verdict' for that party." *Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Or, stated less formally, Ace is entitled to summary judgment only if no reasonable jury could find in favor of Scott. *See Anderson*, 477 U.S. at 251–52.

## III.

The only issue in this case is whether Ace insured the car Scott was in during the collision. The record clearly shows that it did not.

Michigan law provides that "A person who suffers accidental bodily injury while . . . a passenger of a motor vehicle operated in the business of transporting passengers shall receive the personal protection insurance benefits to which the person is entitled from the insurer of the motor vehicle." Mich. Comp. Laws § 500.3114(2). There is no dispute that Scott was a passenger in a vehicle that was in the business of transporting passengers. So if the vehicle Scott was in during the

4

collision was insured, that insurer is responsible for her personal protection insurance benefits.

But if the vehicle in the collision was not insured, then Scott must recover "personal protection insurance benefits through the assigned claims plan" because neither she nor the vehicle have insurance. (*See* ECF No. 31-2 (Scott affidavit swearing she did not have auto insurance at the time of the collision)); Mich. Comp. Laws § 500.3172(1)(a) (providing that a person "may claim personal protection insurance benefits through the assigned claims plan" if "[n]o personal protection insurance is applicable to [an accidental] injury" from a collision).

Ace was not the "insurer of the motor vehicle" Scott was a passenger in. *See* Mich. Comp. Laws § 500.3114(2). Ace provides the only insurance policy at issue in this case. (*See* ECF No. 25-4.) That Ace policy covers five specific vehicles. (ECF No. 25-4, PageID.178 (listing the schedule of covered autos the insured owns).) The VIN numbers of the vehicles covered by the policy do not match the VIN number of the vehicle in the collision. (*Compare* ECF No. 25-4, PageID.178, *with* ECF No. 25-1, PageID.161.) And Scott has not provided any other evidence showing that the VIN number of the vehicle Scott was in matches the VIN numbers listed in the policy. Therefore, no reasonable jury could find that Ace (via this policy) insured the vehicle in which Scott was injured. So Ace cannot be responsible under Michigan law for providing Scott with personal protection insurance benefits arising from the collision.

That would seemingly be the end of the matter. Scott, however, resists this conclusion in two ways. First, Scott states that there is evidence that Ace

5

"confirm[ed]" that it is the "proper No-Fault insurer" for Scott, which is proof that it is the proper insurer. (ECF No. 31, PageID.332.) And second, Scott states that she reasonably relied on Ace's statements that it was the proper insurer, so Ace should be equitably estopped from asserting that it is not in this litigation.

In support of the first argument, Scott points the Court to the September 23, 2020 email from a representative of Chubb North America, Ace's claim adjuster. (ECF No. 31-4.) The representative writes, "I was finally able to connect with my insured today who provided the attached document noting that PIP coverage applies to the vehicle involved." (*Id.* at PageID.350.)

While at first blush this statement could provide some indication that Ace insured the vehicle in the collision, it does not go as far as confirming that Ace is the proper insurer. For one, it simply states the "insured" noted that coverage applies to the vehicle involved. It does not say that Ace also made that conclusion. Further, the referenced attachment shows that the policy lapsed on March 25, 2020. (ECF No. 34-1, PageID.433.) As the collision was on April 13, 2020, that particular policy could not have covered the vehicle during the collision. Taking those two pieces of evidence together, no reasonable jury could find that this email from Ace's claim adjuster proves that Ace was responsible for insuring Scott.

Scott also relies on Ace's acknowledgement that it received Scott's letter of representation and on Ace's request that Scott submit her medical records and an application for benefits to proceed with her claim. (ECF No. 31-7, PageID.379.)

6

But all this letter confirms is that Ace knew that Scott was represented, which Ace does not dispute. And merely asking Scott for medical records to substantiate her claims and asking for an application for benefits is not confirmation that Ace is the proper insurer. At most it shows that Ace performed its due diligence in the event that it was the proper insurance provider for Scott's injuries—not that it was admitting that it was.

To round out her argument, Scott argues that Ace admitted that it was the proper insurer when answering her complaint. That is not the case. Ace admitted the allegations contained in paragraph 4 of Scott's complaint, which states, "On said date and at all times material herein . . . there were insurance policies in full force and effect which provided Personal Protection Benefits to Plaintiff[.]" (ECF No. 1-1, PageID.13; ECF No. 5, PageID.28.) Ace did not admit that the insurance policy "which provided Personal Protection Benefits" to Scott was the policy it issued. It only admitted that "there were insurance policies in full force" to provide benefits to Scott. It is Ace's position that such policy should come from the MAIPF. So no reasonable jury could find that, based on this admission, Ace confirmed or admitted that it owed Scott coverage for her injuries.

Second, Scott argues that even if the Ace policy does not cover the vehicle she was injured in, Ace should be equitably estopped from denying her coverage. In other words, because Ace "made statements confirming applicable No-Fault coverage for the involved vehicle and [Scott's] claims," and Scott relied on those statements when she closed her MACP claim and when she chose not to include the MAIPF in this

7

lawsuit, Ace should not be allowed to now argue that it will not cover Scott. (*See* ECF No. 31, PageID.338.)

The Court has already determined that none of Ace's statements to Scott "confirm[ed]" that it covers the relevant vehicle or Scott's injuries.

Even assuming that Ace did make such statements, though, it is not clear that Michigan law allows Scott to use equitable estoppel in an insurance coverage case in this way. "The principle of estoppel is an equitable defense that prevents one party to a contract from enforcing a specific provision contained in the contract." *Morales v. Auto-Owners Ins. Co.*, 582 N.W.2d 776, 779 (Mich. 1998). Michigan courts have explained that in insurance coverage cases, equitable estoppel cannot be used to compel an insurer to provide benefits that were not provided by the insurance policy. *See Blood v. Sovis*, No. 341150, 2019 WL 2146262, at *2–3 (Mich. Ct. App. May 16, 2019) (citing *Ruddock v. Detroit Life Ins. Co.*, 177 N.W. 242 (1920)); *See Smit v. State Farm Mut. Auto Ins.*, 525 N.W.2d 528, 531 (Mich. Ct. App. 1994) ("[C]ases applying the doctrine of waiver and estoppel had primarily been ones that involved the insurer's assertion that the contract had been forfeited because of noncompliance with conditions of the contract.").

The insurance policy here does not cover the vehicle that Scott was in. So Scott is seeking to use equitable estoppel to "cover a loss" the policy "never covered by its terms . . . [and] create a liability contrary to the express provisions of the contract the parties did make." *See Smit*, 525 N.W.2d at 531. Michigan law bars such use of equitable estoppel.

8

Further, no reasonable jury could find that Scott "justifiabl[y] reli[ed]" on the statements she claims confirmed Ace's coverage of the vehicle. *See Adams v. Detroit*, 591 N.W.2d 67, 70 (Mich. Ct. App. 1998). After the September 2020 email from Ace's claims adjuster—which Scott says shows that Ace was the proper insurer of her claim—Scott filed a complaint against the MAIPF in Wayne County Circuit Court. (ECF No. 34-3, PageID.449.) In that complaint, Scott alleged that "there is no source of insurance for the at-fault vehicle." (*Id.* at PageID.449.) It thus appears that Scott did not rely on the September 2020 email because she still decided to sue MAIPF in state court several months later based on a theory that the vehicle was not insured. At the very least, Scott suing the MAIPF shows she knew that Ace might not provide coverage. That is also enough to defeat her equitable estoppel theory. *See Divergilio v. Charter Twp. of West Bloomfield*, No. 261766, 2006 WL 3103012, at *7 (Mich. Ct. App. Nov. 2, 2006) ("[I]t is a general rule of Michigan equity that where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel." (citing *Rix v. O'Neill*, 113 N.W.2d 884, 887 (Mich. 1962))).

In sum, the Ace policy that the Chubb director thought might provide coverage had expired prior to the accident. Another Ace policy that was in effect at the time of the collision did not cover the vehicle Scott was in. No statement Ace made to Scott defeats that conclusion. Further, Ace is not equitably estopped from asserting this argument. Scott has not shown that equitable estoppel is proper when it would expand coverage, and even if she could, she cannot show that she justifiably relied on any statement Ace made to her.

The Court therefore GRANTS Ace's motion for summary judgment. (ECF No. 25.) A separate judgment will follow.

SO ORDERED.

Dated: June 13, 2022

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES DISTRICT JUDGE